```
                                        USDS SDNY
                                        DOCUMENT
                                        ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT            DOC #:
SOUTHERN DISTRICT OF NEW YORK           DATE FILED: 2/4/09
------------------------------------X
RST (2005) INC.,                    :
                                    :  07 Civ. 3737 (VM)
                 Plaintiff,         :
                                    :  DECISION AND ORDER
     -  against  -                  :
                                    :
RESEARCH IN MOTION LIMITED,         :
                                    :
                 Defendant.         :
----------------- -------------------X
```

**VICTOR MARRERO, United States District Judge.**

## I.  BACKGROUND

By Decision and Order dated December 16, 2008 (the "Order")[1], the Court granted in part and denied in part the motion of plaintiff RST (2005) Inc. ("RST") for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), and denied the motion of defendant Research in Motion Limited ("RIM") for summary judgment pursuant to Rule 56.  In the underlying action, RST sued for breach of contract, alleging that RIM breached an agreement with RST (the "RST-RIM Agreement") when it failed to either spend $5 million on the development of a limited-edition Blackberry featuring the musical group The Rolling Stones, or pay RST the difference between the amount RIM actually spent and $5 million.  RIM counterclaimed, asserting breach of contract

---

[1] The Order is reported as No. 07 Civ 3737, 2008 WL 5416379 (S.D.N.Y. Dec. 17, 2008).  The facts underlying this action are set forth in the Order, familiarity with which is assumed.

and breach of the implied covenant of good faith and fair dealing.

In the Order, the Court determined that RST was entitled to judgment as a matter of law on certain aspects of its breach of contract claim against RIM, but not as to the affirmative defense that RST materially breached the RST-RIM Agreement's warranty of ownership or control of the licensed properties ("Licensed Properties"). The Court awarded RST summary judgment on the other affirmative defenses asserted by RIM.

With respect to RIM's motion for summary judgment on its counterclaims, the Court stated that it would consider only those grounds for breach of contract contained in RIM's Counterclaim and Answer, dated July 13, 2007 ("Counterclaim and Answer"). RIM alleged in its Counterclaim and Answer that RST breached the RST-RIM Agreement when Palm, Inc. ("Palm") released an advertisement featuring some of the Licensed Properties and promoting the give-away of a flash drive containing an album by The Rolling Stones with the purchase of a Palm device (the "Palm Advertisement"). The Court denied RIM's motion for summary judgment as to this claim, and dismissed RIM's claim for breach of the implied covenant of good faith and fair dealing as duplicative of the breach of contract claim. RST and RIM now move for an

-2-

order pursuant to Local Civil Rule 6.3 ("Rule 6.3") granting reconsideration.[2]

## II.  **STANDARD OF REVIEW**

Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Secs. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).  "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956

---

[2] In connection with the motions for reconsideration, the Court has reviewed the following submissions: RST's Memorandum of Law in Support of Its Motion to Reconsider, dated January 5, 2009 ("RST Opening Mem."); Memorandum of Law in Opposition to RST's Motion to Reconsider, dated January 20, 2009; RST's Reply Memorandum in Support of Its Motion for Reconsideration, dated January 27, 2009 ("RST Reply Mem."); Memorandum of Law in Support of RIM's Motion for Reconsideration and/or for Leave to Amend Its Counterclaim, dated January 5, 2009 ("RIM Opening Mem."); RST's Memorandum of Law in Opposition to RIM's Motion for Reconsideration and/or for Leave to Amend Its Counterclaim, dated January 23, 2009; and Reply Memorandum of Law in Further Support of Research in Motion Limited's Motion for Reconsideration and/or for Leave to Amend Its Counterclaim, dated February 2, 2009 ("RIM Reply Mem.").

F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Rule 6.3 is intended to "'ensure the finality of decisions and to prevent the practice of a losing party ... plugging the gaps of a lost motion with additional matters.'" S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment. See Montanile v. National Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

## III. DISCUSSION

### A. RST'S MOTION FOR RECONSIDERATION

RST argues that the Court's grant of summary judgment as to several of RIM's affirmative defenses rendered the issue of whether RST breached the warranty of ownership or control moot.  RST contends that because RIM did not identify any injuries suffered by this alleged breach, RIM cannot prevail on this affirmative defense.

The Court notes that RST did not raise this argument in its summary judgment papers, and that a motion under Rule 6.3 should not be used to advance theories not previously argued.  See Montanile, 216 F. Supp. 2d at 342.  For this reason alone, RST's motion for reconsideration should be denied.

However, even if the Court were to consider RST's arguments in favor of reconsideration, the Court would find those arguments to be without merit.  RST contends that the Court found "there was no evidence that another entity licensed the Licensed Properties for a conflicting use" (RST Opening Mem. 9), and argues that this conclusion necessarily means that RIM failed to show that it suffered any damages as a result of a breach of the warranty of ownership or control.  This argument misconstrues the Court's earlier conclusions.  The Court determined that

-5-

neither the Palm Advertisement nor the agreement in which Virgin Records America ("Virgin Records") licensed some of the Licensed Properties to SanDisk, Inc. ("SanDisk") (the "Virgin-SanDisk Agreement") constituted licensing activity by RST. The Court made no finding with respect to whether a third party engaged in licensing activity that would have demonstrated a breach of the warranty of ownership or control. RIM alleged damages "to be determined at trial" in its Counterclaim and Answer (see Counterclaim and Answer ¶¶ 17-18), and RIM estimated that damages would amount to at least the $1 million it paid as a licensing fee. RIM argued in its summary judgment papers and argues here in opposition to RST's motion for reconsideration that it would not have paid the licensing fee or incurred the planning and development costs associated with the limited-edition Blackberry if RST had not represented that it had full ownership or control of the Licensed Properties. RST has not shown that there are no genuine issues of material fact regarding the damages suffered by RIM as a result of the alleged breach of the warranty of ownership or control.

RST also contends that RIM's breach of warranty claim affirmative defense was "inextricably tied to its allegations that the Virgin/SanDisk License and Palm Advertisement constitutes [sic] the breach," and that the

breach of warranty affirmative defense must fail because the Court rejected those allegations. (RST Opening Mem. 10.) Again, the Court notes that this argument was not presented at the summary judgment stage and the Court is not required to consider it here.

In addition, this argument is unavailing, as RIM's breach of warranty claim does not necessarily depend on whether the Virgin-SanDisk Agreement or the Palm Advertisement constitutes licensing activity by RST. As the Court noted in its Order, there are still genuine issues of material fact regarding the ownership or control of the Licensed Properties.[3] RIM has presented evidence that could support a finding that Virgin Records licensed at least some of the Licensed Properties to SanDisk, in the form of the Virgin-SanDisk Agreement. There is no basis for the Court to find, as a matter of law, that RST did not breach the warranty of ownership or control, because as the Court observed in its Order, the precise relationship between Virgin Records and RST has not yet been established. RIM

---

[3] RST argues in its reply memorandum: "To demonstrate a breach of the warranty of ownership and control, RIM must show that some other entity either objected to RST's license of the rights to RIM or licensed the same rights to someone else for the same purpose - i.e., for use in connection with a Rolling Stones-branded telephone or [personal digital assistant]." (RST Reply Mem. 2-3.) This argument was raised for the first time at the motion for reconsideration stage and the Court need not consider it. The Court notes, however, that this interpretation of the breach of warranty of ownership or control affirmative defense is not supported by the plain language of the RST-RIM Agreement.

-7-

might yet be able to show at trial that RST did not own or control all rights in or to the Licensed Properties, and thus breached the warranty. RST has cited no controlling law or factual matters overlooked by the Court, and its motion for reconsideration is therefore denied.

B.   RIM'S MOTION FOR RECONSIDERATION

   1.   Implied Covenant of Good Faith and Fair Dealing

In its motion for reconsideration, RIM first argues that the Court erred when it dismissed RIM's claim for breach of the implied covenant of good faith and fair dealing as duplicative of RIM's breach of contract claim. RIM contends that once the Court granted judgment as a matter of law to RST on certain aspects of RIM's breach of contract claim, the implied covenant claim was no longer duplicative.

The Court finds this argument to be without merit.  RIM points to a single case in which a court in this district allowed a breach of covenant claim to proceed after dismissing a breach of contract claim, finding that the Federal Rules of Civil Procedure permit "alternative pleading of contradictory claims." DiFolco v. MSNBC Cable LLC, No. 06 Civ. 4728, 2007 WL 959085, at *4 (S.D.N.Y. Mar. 30, 2007).   However, the weight of authority in this district strongly supports the dismissal of an implied

-8-

covenant claim based on the same underlying facts as a breach of contract claim. See, e.g., Goldblatt v. Englander Commc'ns, LLC, No. 06 Civ. 3208, 2007 WL 148699, at *5 (S.D.N.Y. Jan. 22, 2007) (collecting cases). This proposition holds even if the contract claim was rejected at the motion to dismiss or summary judgment stages. See, e.g., Peabody v. Weider Publ'ns, Inc., No. 04 Civ. 2165, 2006 WL 3802214, at **3-5 (S.D.N.Y. Dec. 26, 2006) (dismissing implied covenant claim as duplicative of breach of contract claim after granting defendant summary judgment on breach of contract claim); Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc., No. 05 Civ. 8510, 2007 WL 438088, at **5-8 (S.D.N.Y. Feb. 08, 2007) (dismissing implied covenant claim as duplicative of breach of contract claim after granting motion to dismiss breach of contract claim). As the Court noted in its Order, RIM's Counterclaim and Answer used exactly the same language when asserting the breach of contract and implied covenant claims, and those claims are based upon the same factual allegations.[4]  The claims are therefore duplicative.

---

[4] RIM alleged in its Counterclaim, "RST has breached the License Agreement and/or the implied covenant of good faith and fair dealing by permitting the Licensed Property to be used by Palm in its advertising campaign ... and/or by falsely representing that RST 'owns and controls all rights in and to the Licensed Properties.'" (Counterclaim and Answer ¶ 6.)

RIM contends that its summary judgment briefs allege that its implied covenant claim is not grounded upon an express contractual breach, but rather upon RST's knowledge at the time it entered into the RST-RIM Agreement that:

(I) The Rolling Stones, through Virgin, had licensed the exact same Rolling Stones properties to SanDisk; (ii) the Rolling Stones Card ... would be used in conjunction with mobile phones and PDAs; (iii) SanDisk was planning joint-promotional campaigns with handheld manufacturers, including potentially Palm; and (iv) the Rolling Stones had approved publicity touting the fact that the Rolling Stones Card could be used in conjunction with "Palm Devices."

(RIM Reply Mem. 3.) As explained in the Order, these are not the grounds for the implied covenant claim stated in the Counterclaim and Answer, and the Court was not required to consider them on summary judgment.

RIM also argues here, for the first time, that its implied covenant claim could be supported by a finding that even if RST did control the Licensed Properties, "it failed to exercise control over those [Licensed Properties]." (RIM Opening Mem. 5.) Notwithstanding the confusion inherent in this proposition, RIM's reliance upon the same conduct alleged to constitute a breach of contract - a breach of the warranty of ownership or control - shows that an implied covenant claim based on these grounds is still duplicative. The motion for reconsideration on this ground is denied.

    2.    Grounds for Breach of Contract and Implied
          Covenant Claims

RIM also takes issue with the Court's decision to consider only the allegations articulated in its Counterclaim and Answer as a basis for summary judgment on RIM's counterclaims. The Court considered the Palm Advertisement and RST's allegedly false representation that it owned or controlled all rights in and to the Licensed Properties as grounds for RIM's counterclaims. The Court declined to consider the Virgin-SanDisk Agreement or the press release announcing the agreement (the "Press Release") as grounds for the counterclaims. RIM now contends that the Court "overlooked the fact that much of the information it did not consider consisted of evidence formulated during the discovery process" (RIM Opening Mem. 6), and that therefore the Court should have considered all of the arguments set forth in RIM's summary judgment papers.

RIM has cited no controlling law or factual matters that the Court overlooked that might reasonably be expected to alter the outcome of the Order. If certain grounds for liability could have been articulated only after the Counterclaim and Answer was filed because the facts supporting them came to light during the discovery process, RIM should have amended its Counterclaim, because its Counterclaim very clearly alleged that both causes of actions were based upon the Palm Advertisement and the

-11-

allegedly false representation that RST owned or controlled all rights in or to the Licensed Properties. RIM now characterizes its arguments that the Virgin-SanDisk Agreement and the Press Release constituted breaches of the contract or of the implied covenant of good faith and fair dealing as "[v]arious evidentiary proofs" that "were only discovered through deposition and discovery." (Id.) RIM does not cite any controlling law that would support this interpretation of alternate causes of action as mere "evidentiary proofs."

In addition, as with its other arguments on its motion for reconsideration, RIM did not raise this argument at the summary judgment stage, and the Court is not required to consider new arguments here. RIM's motion for reconsideration is therefore denied.

The Court notes, however, that even if it had considered all of RIM's arguments on the merits, RIM would not have prevailed on its breach of contract claim because most of the grounds it wants the Court to consider here were already considered and rejected as affirmative defenses to RST's breach of contract claim. The only argument regarding breach of contract that was not considered earlier by the Court is RIM's contention that RST breached the RST-RIM Agreement's confidentiality term by referring to its

-12-

existence in several cease-and-desist letters sent to SanDisk and Palm. The RST-RIM Agreement prohibits either party from disclosing "any information or matters revealed to the other pursuant to" or "any of the specific terms and conditions" of the RST-RIM Agreement. (RST Declaration in Support of Motion for Summary Judgment ("Stone Decl."), Ex. 3 ¶ 28.) The cease-and-desist letters from RST referred to "contractual relationships ... regarding the prior licensing of certain of The Rolling Stones' trademarks, rights of publicity, and other intellectual property in connection with the sale of a product to be manufactured and distributed" by RIM. (Id. Ex. 37 at 1, Ex. 39 at 1.) It is clear that the cease-and-desist letters do not breach the confidentiality requirement because they do not reveal "any information revealed pursuant to" or "any specific terms and conditions of" the RST-RIM Agreement.

C.    LEAVE TO AMEND

RIM requests leave to file an amended counterclaim articulating all of the arguments presented in its summary judgment papers that were not considered by the Court in the Order. The Court will not grant leave to amend with respect to the breach of contract claim because the proposed amendment would be futile. See Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003); O'Hara v. Weeks Marine, Inc., 294 F.3d

55, 69 (2d Cir. 2002). As explained above, the Court considered and rejected most of those claims on the merits when it evaluated RIM's affirmative defenses in the context of RST's motion for summary judgment, and the affirmative defense of breach of the confidentiality requirement cannot succeed.

With respect to the claim for breach of the implied covenant of good faith and fair dealing, RIM contends that an amended claim will not be based upon an express contractual breach, but rather upon "certain conduct by RST which had the effect of 'frustrating the rights and reasonable expectations of'" of RIM, specifically RST's knowledge at the time it entered into the RST-RIM Agreement that:

> (I) The Rolling Stones, through Virgin, had licensed the exact same Rolling Stones properties to SanDisk; (ii) the Rolling Stones Card ... would be used in conjunction with mobile phones and PDAs; (iii) SanDisk was planning joint-promotional campaigns with handheld manufacturers, including potentially Palm; and (iv) the Rolling Stones had approved publicity touting the fact that the Rolling Stones Card could be used in conjunction with "Palm Devices."

(RIM Opening Mem. 3-4.)

Because RIM's Counterclaim and Answer specifically alleged that its breach of contract claim was based only upon the Palm Advertisement and the purported breach of the warranty of ownership or control, the grounds that RIM

-14-

proposes to assert for its amended breach of implied covenant claim would not be duplicative of the original breach of contract claim. Although discovery has already closed, the grounds that RIM would assert arise from the same set of operative facts that were the subject of discovery. The Court did not consider the merits of the implied covenant claim in its Order, and there is no suggestion that an amended counterclaim would prejudice RST. Leave to amend RIM's counterclaim with respect to the implied covenant claim is therefore granted.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of plaintiff RST (2005) Inc. for reconsideration (Docket No. 31) of the Court's Decision and Order dated December 16, 2008, is DENIED; and it is further

**ORDERED** that the motion of defendant Research in Motion Limited for reconsideration (Docket No. 29) of the Court's Decision and Order dated December 16, 2008, and/or for leave to amend its counterclaim, is DENIED with respect to the motion for reconsideration and the motion to amend the counterclaim regarding the breach of contract claim, and GRANTED with respect to the motion to amend the counterclaim

-15-

regarding the claim for breach of the implied covenant of good faith and fair dealing.

The parties are directed to appear at a final pretrial conference on March 6, 2009 at 11:30 a.m. to schedule a date for trial and related preparations.

**SO ORDERED:**

Dated:    New York, New York
          4 February 2009

                                        VICTOR MARRERO
                                           U.S.D.J.

-16-